UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LEAF FUNDING, INC., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| FLORISSANT MRG, INC., et al., | ) ) |
| Defendants, | ) Case No. 4:08-CV-284 (CEJ) |
| vs. | ) ) ) ) |
| DIRECT CAPITAL CORPORATION, | ) ) |
| Third-Party Defendant. | ) ) ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on defendants' motions to enforce a settlement agreement and plaintiff's motion to reinstate this matter to the active docket. Each of the issues have been fully briefed.

I.   **Procedural Background**

The Court received notice on October 5, 2009 that the parties had entered into a global settlement of this matter. On October 6, 2009, the Court ordered the parties to file a stipulation of dismissal by November 6, 2009. The Court also denied all pending motions, including three motions for summary judgment, as moot.

Just four days before the stipulation of dismissal was due, plaintiff filed a motion to vacate the October 6 order and to reinstate the case to the active docket. In the motion, plaintiff claimed that the parties failed to finalized their settlement agreement. Prior to receiving this motion, the Court was not aware that there was a dispute about whether this matter had actually settled. The Court denied plaintiff's motion on November 17, 2009, noting that it appeared the parties had agreed on the essential

terms for settling the case. The Court gave the parties additional time in which to file their stipulation for dismissal.

On December 11, 2009, plaintiff filed a motion to vacate the November 17, 2009 order and again asked the Court to reinstate this case. Plaintiff continues to assert that the parties never reached an agreement. Defendants opposed plaintiff's motion, and filed two separate motions to enforce the settlement. The various motions were fully briefed on February 2, 2010.

II.     **Settlement Negotiations**

On August 31, 2009, plaintiff Leaf Funding sent a draft settlement agreement to each defendant.[1] The basic terms of the agreement included: (1) a payment from "Florissant and/or Dunkin Brands[2]" to plaintiff in the sum of $10,400.00 due by August 31, 2009;[3] (2) a payment of $11,500.00 to plaintiff from Direct Capital, also due on August 31, 2009; (3) a payment of $36,112.62 from Florissant to plaintiff, which would be due no later than the date on which Florissant sold real estate owned in Illinois.[4]

That same day, counsel for Direct Capital sent an e-mail to plaintiff's counsel with a "few minor" modifications. Most of these modifications simply clarified language contained in the agreement. The only substantive change was moving the payment

---

[1] Defendants include Florissant MRG, Inc ("Florissant"), Teresa and Dennis Price ("The Prices"), and Direct Capital Corporation ("Direct Capital").

[2] Throughout the litigation, the parties have referred to "Dunkin Brands" and "Baskin Robbins" interchangeably. Although Florissant and the Prices operated a Baskin Robbins franchise, Dunkin Brands (the franchisor) is not a party to this litigation.

[3] The due date was the same day that the proposed settlement agreement was sent to defendants.

[4] Florissant owned part of some real estate in Illinois. The proposed settlement agreement required that this property serve as security for the payment obligations under the agreement. The proposed agreement provided that plaintiff would acquire mortgage liens against the property.

due date to a more realistic setting. Different payment dates were subsequently incorporated into the settlement agreement, which was drafted by plaintiff.

On September 3, 2009, counsel for Florissant and the Prices sent an e-mail to plaintiff's counsel, stating that they proposed "a few form and not substantive changes to the agreement." One issue centered on the portion of the agreement requiring payment from Dunkin Brands. Because Dunkin Brands was not a party to the litigation, defendants were concerned that they could not force Dunkin Brands to make the payment. The language in the settlement agreement was subsequently changed by plaintiff to require Florissant only to "authorize" Dunkin Brands to make a payment. Again, plaintiff drafted the agreement containing this language.

On September 4, 2009, plaintiff received a check from Florissant as its first payment under the settlement agreement. Although plaintiff was already receiving payments pursuant to the settlement agreement, the parties continued to negotiate the precise language of the agreement. On September 24, 2009, plaintiff sent defendants a revised settlement agreement. Counsel for defendants Florissant and Dennis and Theresa Price responded that the agreement was "OKAY", other than "one glitch" that needed attention, involving the amount of the settlement to be paid by Dunkin Brands.[5]

On October 2, 2009, a second check from Florissant was sent to plaintiff pursuant to the agreement. On October 5, 2009, the Court received notice from

---

[5]The subsequent conversation relating to this "glitch" indicates that the dispute was not centered on the amount owed to plaintiff. It is clear that the amounts owed to plaintiff under the agreement had been established and agreed to by the parties. Instead, the "glitch" involved how the payments would be split between defendants and Dunkin Brands. Duncan Brands was refusing to pay the full $10,400, as specified under the agreement. This issue was resolved on September 29, 2009, when Florissant agreed to absorb the extra amount due to plaintiff.

counsel for Florissant and the Prices that this action had settled. The next day, counsel for Direct Capital sent an e-mail to all parties asking if they were "now in position to have [their] clients sign the settlement agreement?" Counsel for defendants Florissant and the Prices indicated that he would tell his clients to sign the agreement.

On October 8, 2009, plaintiff e-mailed defendants asking for a status update on whether defendants had signed the settlement agreement. Plaintiff told defendants to sign the most recent copy of the agreement, pursuant to which Florissant had been making payments to plaintiff. Plaintiff noted that "[w]e still have the unresolved issue of the mortgage on the property."[6]

On October 13, 2009, the Senior Vice President of Direct Capital Corporation signed the settlement agreement. On October 21, 2009, Direct Capital forwarded plaintiff a check for $11,500.00, "satisfying Direct Capital's obligations under the Settlement Agreement."

On December 14, 2009, counsel for Florissant and the Prices informed plaintiff's counsel by letter that his clients had signed the settlement agreement. The signed settlement agreements were enclosed in the mailing. Plaintiff was asked to circulate the documents for signature. Counsel addressed the issue surrounding the Illinois property at the close of the letter:

> With respect to the real estate, while I was attempting to get a legal description of the property so that we could draft either a lien or an assignment to the title company, the property was sold. Baskin-Robbins has been paid so that my clients do not lose their franchises, and therefore, would lose outright their ability to make payments to [plaintiff]. There is money left and being held in escrow, but I have not been informed as to what the amount of that money is, nor

---

[6]This "unresolved issue" centered on defendant's failure to provide plaintiff a copy of the legal description for the Illinois property. Pursuant to the agreement, Florissant was required to execute a mortgage on the property as security for its payments to plaintiff. Florissant had not yet done this.

-4-

> do I have any information as to how or where the money is to be disbursed....I do know that the real estate was sold for a significantly less number than the Prices would have liked to have received for it and if my understanding is correct, it was about $800,000.

Plaintiff filed a motion to re-instate this matter to the active docket on December 11, 2009. Although plaintiff drafted the settlement agreement and urged defendants on multiple occasions to sign it, plaintiff remains the only party that has not yet signed the agreement. Plaintiff claims that, because it has not yet signed the agreement, the agreement is not binding. Plaintiff notes that the agreement contains a provision stating that the agreement is effective on the date of the signature of the last party to sign it. The agreement states that "[i]f all parties do not sign this agreement, then it will not be effective as to any party."

Defendants claim that the parties have agreed on all essential terms of the settlement. Defendants note that the amounts owed to plaintiff are not in dispute. Instead, plaintiff appears to be withholding its signature due to Florissant's failure to obtain a mortgage on the property in Illinois. Defendants also note that they have been making payments to plaintiff pursuant to the agreement.

### III. Discussion

"Contract law governs the question of whether the parties entered into an enforceable settlement agreement." St. Louis Union Station Holdings, Inc. v. Discovery Channel Store, Inc., ----S.W.3d----, 2009 WL 4823866 at *2 (Mo. App. Ed. 2009). "The creation of a valid settlement agreement requires a meeting of the minds and a mutual assent to the essential terms of the agreement." Id. "The parties need not reach an agreement on every term, so long as there is sufficient substance to discern the parties' intent." Enterprise Rent-A-Car Co. v. U-Haul Intern., Inc., 2007 WL 1063528 at *6 (E.D. Mo. 2007). So long as there is mutual assent by all parties,

the fact that one or more parties did not sign the agreement is generally irrelevant. Id.

The Court finds that the parties manifested mutual assent to all essential terms of the agreement. It is noteworthy that it was plaintiff who drafted the settlement agreement and forwarded it to defendants for their signature. Clearly, by making the settlement offer to defendants, plaintiff agreed to the terms of its own offer. Further, plaintiff indicated in correspondence to defendants that it agreed to the terms of the agreement. On October 8, 2009, plaintiff told defendants to sign the most recent copy of the agreement. It would make little sense for plaintiff to urge defendants to sign a settlement agreement, drafted by plaintiff, to which plaintiff did not agree. Defendants manifested their intent to be bound by the settlement agreement not only through their correspondence with plaintiff, but also by signing the actual agreement.

Further, the agreed upon terms of the settlement are equally clear. The amounts each defendant will pay to plaintiff are clearly listed in the settlement agreement drafted by plaintiff and signed by defendants. Acceptance of these amounts were also discussed in correspondence between the parties.

The issue turns on the parties' agreement to use the Illinois property as security for the payments due to plaintiff. Plaintiff claims that, because the property was sold (for less than what was expected) prior to the execution of a mortgage, this portion of the agreement is now meaningless. Plaintiff's complaint is misplaced. The fact that Florissant failed to execute a mortgage on the Illinois property is not a question of contract formation. Instead, it is a breach of contract issue. There is no evidence to suggest that the execution of a mortgage on the Illinois property was a condition precedent to the settlement. Instead, the settlement agreement explicitly says that Florissant would execute a mortgage on the property "at the time of the execution of

this agreement." Clearly, by the terms of the agreement itself, Florissant's obligation to execute a mortgage on the property was not a condition precedent to the formation of the contract. Further, there is nothing in the correspondence between the parties that would suggest otherwise. There is no doubt that the parties agreed, prior to the sale of the Illinois property, that Florissant was required to execute a mortgage on the property. That Florissant failed to do this does not change the fact that the parties agreed to it---at a time when it was possible to perform.

Plaintiff also contends that the settlement is invalid because plaintiff has not received payment from Dunkin Brands. The portion of the agreement requiring payment from Dunkin Brands reads as follows:

> Florissant shall authorize Dunkin Brands to pay to [plaintiff] the sum of $10,400.00. Payment is the amount of $10,400.00 shall be made by September 25, 2009. [Plaintiff] hereby acknowledges that Dunkin Brands is a separate entity and….Florissant has no direct control over the payment and cannot force Dunkin Brands to pay it under any time schedule agreed upon by the parties herein. However, Florissant agrees to make every reasonable effort to see to it that the payment is made forthwith.

Here again, plaintiff fails to distinguish between issues of contract formation and issues of breach of contract. The settlement agreement required Florissant to "authorize" Dunkin Brands to make payments to plaintiff. If Florissant failed to do this, plaintiff again can seek relief through a breach of contract action. A missing payment does not negate the fact that a binding agreement was formed. Further, there is no language indicating that the Dunkin Brands payment was a condition precedent to the settlement agreement. To the contrary, plaintiff explicitly acknowledged within the settlement agreement that defendants could not force Dunkin Brands to make the payment by the due date.

Plaintiff also contends that a settlement agreement was not finalized because Florissant failed to timely make payments required under the agreement. Again, this is not an issue of contract formation and is irrelevant to the Court's analysis.

Finally, plaintiff contends that the settlement agreement is not binding because it was not signed by all parties. The agreement states that it "shall be effective on the date of the signature by the last party to sign it. If all parties do not sign this agreement, then it will not be effective as to any party." Although plaintiff drafted the settlement agreement and urged all parties to sign it, plaintiff remains the only party that has not signed the agreement.

Despite this language, the parties' actions in this case strongly refute the presumption that they did not intend to be bound by the settlement until all parties had signed the written agreement. The Court's October 6, 2009 order stated that the parties had settled this matter. None of the parties, including plaintiff, objected to this characterization until one month later, when the deadline for filing a stipulation for dismissal was just a few days away. This delay strongly indicates that plaintiff also believed that the parties had reached an agreement.[7] Further, plaintiff has continued to receive payments from defendants pursuant to the settlement agreement. Plaintiff has not rejected these payments or indicated that they are not due. Partial performance of a settlement agreement is a factor indicating that the parties intended to be bound by the agreement. Based on all these factors, the Court believes that all

---

[7]This is especially true in light of the language in the order indicating that the matter would be dismissed if a stipulation was not timely filed. By failing to timely correct the Court in its assertion that this matter had settled, plaintiff exhibited a lack of concern that the matter would be dismissed pursuant to the Court's order--- strongly suggesting that plaintiff felt that a settlement agreement had been reached.

parties believed they were acting pursuant to a valid and enforceable settlement agreement.

The Court concludes that a valid settlement agreement exists between the parties, with the terms of that agreement being identical to those terms contained in the written agreement signed by defendants. Therefore, the Court will grant defendants' motions and compel plaintiff to execute the settlement documents. Further, because the parties failed to file a stipulation of dismissal, this matter will be dismissed with prejudice pursuant to the Court's November 17, 2009 order.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion [#86] to vacate the Court's order and to reinstate this matter is **denied**.

**IT IS FURTHER ORDERED** that defendants' motions [#88, #91] to enforce the settlement are **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 12th day of April, 2010.